STEWART-GWYNNE Co., Inc., v. SIGMAN.*

(Division B.   Nov. 24, 1924.)

[101 So. 789.   No. 24374.]

1. FACTORS. *Peremptory instruction for cotton factor in suit for balance on account, held proper.*

Where a cotton factor advanced money on cotton, shipped it for sale, and after sale furnished the customer proper accounts thereof, and the cotton was sold for a fair price and diligence was exercised in attempting to sell, and no objection was made

to the manner in which the cotton was being handled, and there was no testimony that the cotton could have been sold for a higher price, then it was proper to give a peremptory instruction in favor of the cotton factor suing for the balance of an account due him, which account was admitted to be correct in so far as the advances to the customer, the amount for which the cotton sold, and other charges in the handling of it were concerned.

2. FACTORS. *Conversation between prospective cotton shipper and factor held but opinion, and not agreement altering customary relationship.*

Where a prospective shipper of cotton to a cotton factor, had a conversation with one of its officers in which it was stated in effect how the factor would handle the cotton, that they would permit the customer to draw on them for a certain amount, would sell the cotton as soon as practicable and take their commission out of the sale, and that the business would show a profit, all of this is but a conversation expressing an opinion, and does not arise to the dignity of an agreement or contract guaranteeing the prospective customer against loss because of the decline in price of cotton, and does not alter or change the customary relationship of cotton factor and customer.

*Headnotes 1. Factors, 25 C. J., section 131; 2. Factors, 25 C. J., section 33 (1926 Anno).

APPEAL from circuit court of Marshall county.
HON. THOS. E. PEGRAM, Judge.

Suit by the Stewart-Gwynne Company against Charles A. Sigman. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

*L. A. Smith,* for appellant.

Analysis of the plea of the appellee discloses that he first, claimed to be agent of Stewart-Gwynne Company, and guaranteed against loss by them; second, that when he shipped cotton to them that they improvidently refused to sell the cotton until after both appellant and appellee had sustained a loss. The reply of appellant is that there was no agency by appellee for them, but only the relationship of cotton factor and customer existed;

that the loss was occasioned by a declining market; that they did their best for appellee; were free sellers; a prominent firm; and that the cotton was frequently on the tables for prospective buyers. The proof furthermore shows that often, even after sales had been made for appellee by appellant with the utmost difficulty that the buyers rejected bale after bale, and the cotton was of poor quality that Mr. Sigman shipped in to appellant.

It appears that the instant case is eminently a proper case for the court to upset the findings of fact by the jury below, because manifestly from the evidence of every witness in the case, including the evidence given by appellee himself, their verdict is erroneous and not any true or correct finding of the facts. *Gillis* v. *Smith,* 114 Miss. 665, 75 So. 451; *Wilson* v. *Horne,* 37 Miss. 477.

The letters of the appellee to appellant were of the utmost probative value, and their value to the jury was very early recognized by the jury, and feared by counsel for appellee, as is disclosed by the transcript. While the jury was deliberating they called the sheriff and asked him to get the letters Mr. Charles Sigman wrote the plaintiff, Stewart-Gwynne Company, in the case which were attached to the depositions and which were not taken out with the jury when they went to deliberate. All of such letters having been read to the jury in their presence, and in the presence of the court. Counsel for the defendant below, appellee here, Mr. Sigman, objected to their having the letters submitted to them, while counsel for appellant, Stewart-Gwynne Company, plaintiff below, asked that the request of the jury be granted; and the court declined to send the letters, as requested, to the jury and counsel for appellant excepted. This was error, and the jury should have been permitted to have these letters, as they requested. It was not only error, but highly prejudicial error, because if the jury had had those letters to consider carefully they would have brought in a ver-

dict for appellant, and this counsel for appellee well apprehended when he refused to agree that it be done, and prevented the court from permitting it. *Taylor* v. *Sorsby,* Walker 97; *Offit* v. *Vick,* Walker 99.

*Lester G. Fant,* for appellee.

If a verdict is supported by evidence it will not be disturbed, although a finding for the opposite parties would have been more satisfactory to the court. *Yazoo, etc., R. R. Co.* v. *Williams,* 67 Miss. 18; *Kansas R. R. Co.* v. *Cantrell,* 70 Miss. 329; *Moffit* v. *Robertson,* 2 Miss. Dec. 704; *Woodson* v. *Owens,* 12 So. 207; *Bernheim* v. *Dibbrell,* 11 So. 795; *Terry* v. *State,* 12 So. 544; *Holmes* v. *Simon,* 71 Miss. 245; *Dickson* v. *Parker,* 3 How. 219, 134 Am. Dec. 78; *Lee* v. *Guice,* 13 S. & M. 656.

Where there is conflicting evidence it is the peculiar province of the jury to weigh it, and give credit to those facts and circumstances, which in their judgment are entitled to the greatest consideration, and it is not for courts in such cases to rejudge their judgments. *Kelly* v. *Miller,* 39 Miss. 17; *Buckingham* v. *Walker,* 48 Miss. 609; *Miss. Central R. R. Co.* v. *Mason,* 51 Miss. 234; *Ala., etc., R. R.* v. *Deer,* 87 Miss. 339; *Mitchell* v. *McGee & Alford,* 48 So. 234; *Vicksburg Bank* v. *Moss,* 63 Miss. 74; *Greenville, etc., Co.* v. *Hyatt & Smith,* 11 So. 471.

SYKES, P. J., delivered the opinion of the court.

The appellant, Stewart-Gwynne Company of Memphis, Tenn., cotton factors, brought suit in the circuit court against Charles A. Sigman, appellee, for the sum of five thousand one hundred ninety-three dollars and fifty cents. Appellant claimed this amount due it by appellee during the cotton season of 1920, being a difference between the amounts advanced by appellant as cotton factors to appellee as a customer on cotton shipped appel-

lant by apellee and representing the difference in the amount the cotton sold for plus warehouse, insurance, and commission charges. Attached to the declaration was an itemized statement of the account between appellant and appellee, sworn to by the secretary and treasurer of the appellant corporation. The appellee pleaded first the general issue and gave notice thereunder that he did not owe the account because the appellant procured him to ship cotton to it under an agreement that if he bought cotton and drew on appellant with a margin of a sufficient number of points appellant would sell the cotton so as to protect Sigman in the price paid by him for the cotton; and that under his agreement he was buying cotton for the appellant, and that it improvidently refused to sell this cotton until it had gone down to such an extent that the margin Sigman had in the cotton was wiped out. Plaintiff filed a written denial to the special matter set out under the general issue.

The testimony on behalf of the plaintiff in the court below (appellant here) showed that it was a corporation doing business as a cotton factor in Memphis, Tenn. That the appellee during the months of January and February, 1920, from Holly Springs shipped cotton to the appellant to be sold by it for appellee; that ordinarily when the appellee made a shipment of cotton to appellant he would draw on appellant for a certain amount of money, which drafts were always honored; that upon receipt of appellee's cotton, it immediately exhibited in its cotton room samples of it for sale, exercised due care and diligence in trying to sell and sold it as speedily as it could under the conditions of the market, except when it had instructions from the defendant Sigman not to sell. It proved the correctness of the account against the defendant and showed it was properly equipped in every way to transact the business of a cotton factor. Its officers and employees denied having any special agree-

ment with the defendant further than the one of cotton factor and customer. Voluminous correspondence was exhibited between the parties to this suit, which in brief shows that both parties recognized the relationship of cotton factor and customer, that Sigman complained about some of the sales of cotton for him, and sometimes requested the plaintiff not to sell his cotton below certain prices. From time to time he was furnished statements of his account and never at any time denied its correctness. It is further shown that plaintiff sold defendant's cotton at the market price at the various times of sale.

The defendant himself testified that, among other things, he was engaged in buying and selling cotton at Holly Springs; that the latter part of the year 1919 he shipped some cotton to this plaintiff to be sold for him; that on December 23d he called at the cotton office of appellant to get his check for this cotton, and while there had a conversation with one of the officers of the appellant company, Mr. Cronkrite, about how the appellant would handle appellee's cotton if he would ship it to them; that Conkrite showed him grades and told him what he could get for cotton; that this cotton was similar in grade and class to the cotton he was buying around Holly Springs; that defendant then asked him if he shipped cotton to plaintiff would it permit him to draw for the amount of this cotton less two cents a pound; that this was agreeable to the defendant, and that Mr. Cronkrite stated when the cotton was sold they would take their commission and that the business would show him a nice profit; and further that Cronkrite stated that appellant would sell the cotton right away after it was sent in.

All of the testimony in the record shows that beginning about the 1st of January, 1920, the cotton market rapidly and continually declined in price; that it was very hard to sell cotton of the kind shipped by the defendant to the plaintiff. The defendant Sigman further testified that,

if his cotton had been sold the following week after shipped to plaintiff, this indebtedness of defendant to plaintiff would not have ensued; in short, that his cotton, if sold in that manner, would have brought the amount of the drafts drawn by him on plaintiff.

Mr. Anderson, a resident of Holly Springs, testified that he was present at the conversation between Mr. Cronkrite and Mr. Sigman; that Mr. Cronkrite showed them a table of cotton and told them what he would get for it, which was a better price than they were getting in Holly Springs. Also he testified that Cronkrite offered to let Sigman draw on him for the purchase price less two cents a pound, and that Cronkrite said if they shipped to him he would sell at a profit; that Cronkrite thought he could sell it for two or three cents a pound more than they were getting in Holly Springs.

At the conclusion of all the testimony a peremptory instruction was requested by the plaintiff and refused by the court.

The cause was then submitted to the jury upon instructions of the court, and the jury returned a verdict in favor of the defendant. From which verdict and judgment this appeal is here prosecuted.

This entire record shows that the appellant company is a reputable cotton factor of the city of Memphis, Tennessee; that it possesses the necessary equipment to carry on this business in a proper manner; that it in fact transacted its business in this way so far as this appellee is concerned; that it exercised reasonable diligence and effort in trying to sell his cotton at the market price; and that it did so sell it at every available opportunity except when expressly prohibited from so doing by the appellant. The record shows that this is the usual customary way for a cotton factor to transact its business with a customer. There was no dispute whatever about these matters. The only question for consideration is

136 Miss.—52.

whether or not the testimony of the defendant Sigman and that of Mr. Anderson, the material part of which is practically set out in full by us above, created a different agreement between these parties than that of cotton factor and customer, and whether or not under this agreement the appellant practically guaranteed to sell this cotton for the appellee at a profit. We do not think this testimony arises to such a degree of dignity. The defendant Sigman was himself engaged in the cotton business in Holly Springs. He knew that the appellant company was a cotton factor in Memphis. He necessarily knew the ordinary way in which a cotton factor transacts business. After analyzing this testimony carefully, the effect of it is only that in the opinion of Mr. Cronkrite he believed it would be a good thing for appellee to ship his cotton to appellant, and that he thought the appellee could make money by so doing. · Of course, both appellant and appellee being engaged in the cotton business necessarily knew that the cotton market fluctuated. At the time the conversation occurred between these parties the price of cotton was better and the market was steadier than it became after January. The entire conversation can only be interpreted to mean that Mr. Cronkrite hoped and believed this business arrangement between them would be profitable to both of them. It can only be treated as the expression of an opinion and a hope, and does not arise to the dignity of an agreement or a contract indemnifying the appellant against any loss by virtue of shipping cotton to appellant.

The instruction from the defendant to the plaintiff in January and February generally speaking, as shown in his letters, were to sell his cotton as soon as practicable, and this the appellant was attempting to do, and doing all the time.

The material questions involved in this case were settled in that of *Dillard & Coffin* v. *Jennings,* 132 Miss. 370,

96 So. 307.  In that case the rule is laid down that where a cotton factor has advanced money on cotton shipped to him for sale, and after sale furnishes the shipper proper accounts thereof, and that the cotton was sold for a fair price, and diligence was exercised in attempting to sell, and no objection is made to the manner in which the cotton was being handled, and there is no testimony that the cotton could have been sold at a higher price, then it is proper to give a peremptory instruction in favor of the cotton factor suing for the balance of account due him.  The judgment of the circuit court is reversed and judgment will be entered here in favor of the appellant for the amount due him as shown by the itemized account.

Reversed, and judgment here for appellant.

*Reversed.*